UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARLENE CONNOR, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-02-CO-02069-S |
| UNITED PARCEL SERVICE, | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The plaintiff, Darlene Connor, claims she is entitled to long-term disability benefits under United Parcel Service's ("UPS") Flexible Benefits Plan (the "Plan"). The cause is presently before the court for consideration of motions for summary judgment filed by defendants United Parcel Service ("UPS") and Connecticut General Life Insurance Company ("Connecticut General"). [Doc. 23, 26]. The motions have been fully briefed and are ready for submission. For the reasons set out below, the motions are due to be granted.

I.      Statement of Facts.

The following narrative description of the case is taken from the Joint Status Report of June 18, 2003:

> [Ms. Connor] claims entitlement to long-term disability benefits provided by UPS through its Flexible Benefits Plan (the "Plan"). Under the terms of the Plan, a participant is considered disabled for the purposes of eligibility for long-term disability benefits during the first 24 months of disability if the Plan Administrator determines that the participant is unable to perform the material and substantial duties of his or her regular occupation due to an illness or accidental injury.
>
> UPS and CGLIC deny that plaintiff is unable to perform the material and substantial duties of her former position as a telephone sales representative. UPS also denies that it is the proper party to sue for disability benefits under the Plan.

[Doc. 22, p. 1-2]. The following facts are undisputed:

> Plaintiff was employed by UPS as a telephone sales representative. She stopped working on February 2, 1999, due to pain in her leg. Dr. Matthews treated her on February 3, 1999 and his initial diagnosis was a possible ilioinguinal neuropathy. Dr. Matthews then referred Plaintiff to Dr. Johnson.
>
> Dr. Johnson found that Plaintiff was 'neurologically intact' and that her 'MRI' was essentially negative and the nerve conduction test showed some evidence of a right L1 radiculopathy and she may also have had a distal peroneal neuropathy at the ankle." [sic] Dr. Johnson's notes from March 24, 1999 indicate that Plaintiff was '50% better after two epidurals.' Dr. Johnson recommended that Plaintiff contact Dr. Wellman regarding any

further disability certification. He also stated: 'I can see no indication for Neurosurgical intervention and I do not believe that she has ilio-inguinia and I see no lumbar discogenic problems requiring surgical intervention as well.'

Plaintiff was also seen by Dr. Kelsey a physiatrist. [sic] Dr. Kelsey's diagnostic impression was: 'Mild DJD of the lumbar spine, No evidence of disc herniation. Residual scar in the right inguinal area secondary to old hernia repair. Sympton magnification secondary to gain issues involving her Workman's Compensation and Disability seeking goals.' Dr. Kelsey also stated the following: 'I have no treatment recommendations for this patient. I do not feel that the patient has any impairments whatsoever. I feel that she is quite employable. I see no need for further treatment for this scar in her right inguinal region and a couple of Ultram a day is minimal pain management (in my opinion). I don't see any evidence that the surgery secondary to the inguinal hernia repair has gone array[sic].'

Intracorp referred Plaintiff's medical records to an independent neurologist, Dr. Steiner, for review. Dr. Steiner's report states: 'In my opinion, an entrapment of a peripheral nerve secondary to a hernia repair in May 1997 would have made itself symptomatically apparent within days of the surgical procedure. It would not be something that was complained about in January 1999, as documented by Dr. Varner. Secondly, the pattern of Darlene Connor's subjective complaints is not consistent with an inguinal neuropathy.' Dr. Steiner concluded by stating that: 'I would not expect this diagnosis (Inguinal neuropathy) to prevent someone from being capable of working in a sedentary position.'

[Joint Status Report, Doc. 22, pp. 2-3].

II.     Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

III. Discussion.

    A. Connecticut General.

Connecticut General points to the undisputed evidence that it is merely a third party claims administrator for the Plan, whose initial disability determinations are subject to appeal and final determination by the administrative committee which UPS has appointed to serve as the Plan Administrator.[1]

---

[1] [Doc. 27, pp. 3-4, No. 1-6]. Pursuant to the Exhibit D of the Court's Initial Order, setting out the court's requirement for submission of summary judgment motions, (Doc. 5), Connecticut General and UPS submitted statements of the facts they claimed to be material and undisputed. The court's order provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." The plaintiff did not respond to the movants' statements of facts, despite more than one opportunity to do so. [Doc. 31, 35]. Moreover, the plaintiff did

"ERISA does not regulate the duties of non-fiduciary plan administrators. As such, non-fiduciaries cannot be held liable under ERISA." *Baker v. Big Star Division of the Grand Union Co.*, 893 F.2d 288, 289 (11th Cir. 1990).

> ERISA defines a fiduciary as one who 'exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets.' 29 U.S.C. § 1002(21)(A)(i). A fiduciary has "authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102 (a)(1), and must provide a "full and fair review" of claim denials, 19 U.S.C. § 1133(2).

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). "An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer, . . . especially if . . . the claims processor has not been granted the authority to review benefits denials and make the ultimate decision regarding eligibility." *Baker*, 893 F.2d at 290. The proper party defendant in an action concerning ERISA

---

not submit any evidence, or point to any evidence already in the record, showing there was a disputed issue of fact with regard to Connecticut General's status as a third party claims administrator. [Doc. 35].

benefits is the party that controls administration of the plan. *Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997).

The undisputed facts and the evidence submitted in support of those facts establish that Connecticut General is responsible for "the initial and ongoing screening of claims to determine whether benefits are payable in accordance with the terms of the Plan" and that "[a]ll liability for payment of claims made under the Plan shall rest with [UPS]." [Doc. 27, p. 3, No. 3-4, citing Administrative Services Agreement, Exh. 1 to Lodi Aff., pp. 4, 7]. UPS and Connecticut General further agreed that:

> It is understood that Employer [UPS] shall be the fiduciary designate under ERISA regulations for the determination of appealed claims and that in this process Administrator [Connecticut General] shall serve solely as Employer's agent to coordinate and facilitate the appeal process.

[Doc. 27, p. 4, No. 6, citing Administrative Services Agreement, Exh. 1 to Lodi Aff., p. 10].

Accordingly, Connecticut General is entitled to summary judgment because the undisputed evidence establishes it is a non-fiduciary claims administrator and is not a proper party defendant under ERISA.

B.   UPS.

UPS contends that it is entitled to summary judgment because the Plan Administrator's final decision to deny Ms. Connor's claim for benefits was correct under ERISA.[2]

When an employee benefits plan gives the plan administrator discretionary authority to determine eligibility or to construe disputed terms of the plan, the plan administrator's decision to deny benefits must be reviewed under an arbitrary and capricious standard. *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir.1989); *Hunt v. Hawthorne Assoc.*, 119 F.3d 888, 912 (11th Cir. 1997).

---

[2]UPS also claims it is not a proper defendant in this action because it has delegated administration of the plan to an administrative committee and retains no control over plan administration. "ERISA provides that a money judgment against an employee benefit plan is only enforceable against the plan as an entity, unless liability against some other person is established. . . . Liability against some other person can be established by proof that the person is a plan administrator and thus responsible for decisions regarding benefits." *Rosen v. TRW, Inc.*, 979 F.2d 191, 192 (11th Cir. 1992) (citations omitted). "ERISA defines the term 'administrator' as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'" *Id.* The written instrument must designate an "administrator." *Hunt v. Hawthorne Assoc., Inc.*, 119 F.3d 888, 891 (11th Cir. 1997). Because it has determined that the denial of benefits was not arbitrary and capricious, this court need not reach the question of whether UPS has successfully delegated its Plan Administrator duties to a committee. *See Rosen*, 979 F.2d at 192-3 (noting that plan documents must name administrator and that committee in case relied upon by district court was a viable operating entity wholly responsible for administering the plan).

"To trigger this standard of review, the language conferring discretion on the administrator must be 'express language unambiguous in its design.'" *Hunt*, 119 F.3d at 912, *citing Kirwan v. Marriot Corp.*, 10 F.3d 784, 789 (11th Cir.1994). In this case, the arbitrary and capricious standard applies because the Plan contains express language conferring discretionary authority upon the administrator to construe its terms.[3] The UPS Flexible Benefits Plan (the "Plan") Summary Plan Description provides, in pertinent part:

> United Parcel Service, as Plan Administrator, shall have the exclusive right and discretion to interpret the terms and conditions of the Plan and to decide all matters arising in its administration and operation, including questions of fact and issues pertaining to eligibility for, and the amount of, benefits to be paid by the plan.

---

[3] If the fiduciary responsible for benefit determinations suffers from a conflict of interest, a heightened arbitrary and capricious standard is applicable. *Newell v. Prudential Ins. Co. of Am.*, 904 F.2d 644, 650 (11th Cir. 1990). UPS pointed to evidence that its plan is funded with periodic contributions to a non-reversionary trust, contending the ordinary arbitrary and capricious standard applies. *See Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1273 (11th Cir. 2002); (conflict of interest does not exist where benefits are paid out of a non-reversionary trust fund). The plaintiff has not argued that the structure of the UPS plan creates a conflict of interest for UPS.

[Doc. 25, Vol II, Ex. B, p. UPS 698]. The Eleventh Circuit has held that comparable language is sufficient to trigger review under the arbitrary and capricious standard. *Hunt,* 119 F.3d at 912, *citing Jett,* 890 F.2d at 1139 ("[Plan administrator] has the exclusive right to interpret the provisions of th[is] Plan, so its decision is conclusive and binding."); Guy v. Southeastern Iron Workers' Welfare Fund, 877 F.2d 37, 38-39 (11th Cir. 1989) ("[Administrator has] full power to construe the provisions of [the] Trust").

When conducting review of an ERISA benefits denial under the arbitrary and capricious standard, the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts known to the administrator at the time the decision was made. *Jett,* 890 F.2d at 1139. When the factual evidence is inconsistent, the court applying the arbitrary and capricious standard of review must uphold the administrator's decision as long as there was a reasonable basis for the decision. *Paramore v. Delta Airlines, Inc.,* 129 F.3d 1446, 1452 (11th Cir. 1997).

Ms. Connor points to Dr. Varner's opinion that she was unable to work and submitted evidence showing that she has been awarded disability

benefits by the Social Security Administration. However, contrary to Dr. Varner's opinion, Dr. Kelsey said Ms. Connor had no impairments whatsoever and was "quite employable." [Doc. 25, pp.133-34]. Dr. Johnson said Ms. Connor was "neurologically intact" and her pain was essentially resolved after three epidural blocks. [Doc. 25, p. 89]. Dr. Steiner reviewed the medical records and opined that the diagnosis of "inguinal neuropathy" would not prevent Ms. Connor from performing sedentary work. [Doc. 25, pp. 91-2]. To obtain long-term benefits under the UPS plan, the participant must be unable to perform the material and substantial duties of any gainful occupation for which she is reasonably qualified based on education, training and experience. [Summary Plan Description, Doc. 25, UPS Exh. B, p. 689]. While the evidence was not wholly consistent, the opinions of Drs. Johnson, Kelsey and Steiner provide a reasonable basis for the administrator's decision to deny Ms. Connor's claim for long-term benefits under the plan.[4] Where there is a reasonable basis for an administrator's

---

[4]Ms. Connor's successful claim for Social Security disability benefits is not dispositive of the issue. *See Paramore*, 129 F.3d at 1452 n. 5; *Whatley v. CAN Insurance Companies*, 189 F.3d 1310, 1314 n. 8 (11th Cir. 1999). The administrative law judge's decision to award Social Security disability benefits was made on May 22, 2001, while the UPS plan administrator made its final decision on July 14, 2000. Therefore, the

denial of benefits, the decision is not arbitrary and capricious. Therefore, the plan administrator's decision to deny benefits was proper and UPS is entitled to summary judgment as to Ms. Connor's claim.

IV.     Conclusion.

For the foregoing reasons, the motions for summary judgment filed by Connecticut General and UPS are due to be granted. A separate order in conformity with this opinion will be entered.

Done this 5th day of November 2003.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

---

administrative law judge's opinion was not part of the record considered by the plan administrator. *See Paramore*, 129 F.3d at 1314 n. 8.